UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | | |
|---|---|---|
| CHRYSTAL J. ANDERSON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CAUSE NO. 3:11-CV-153 CAN |
| | ) | |
| MICHAEL J. ASTRUE | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

**OPINION AND ORDER**

On December 7, 2011, Plaintiff, Chrystal J. Anderson ("Anderson"), filed her complaint seeking review of the final decision of Defendant, Commissioner of Social Security ("Commissioner"). Anderson filed her opening brief on December 7, 2011, and Commissioner filed his response on January 17, 2012. Anderson filed her reply brief on February 21, 2012. This Court now enters its ruling based on the consent of the parties and 28 U.S.C. § 636(c).

**I.  PROCEDURE**

On August 7, 2006, Anderson filed her application for disability insurance benefits, alleging a disability onset date of February 2, 2006. She was initially denied on January 2, 2007, and again upon reconsideration on May 21, 2007. Anderson testified before an Administrative Law Judge ("ALJ") on October 6, 2009. On March 2, 2010, the ALJ issued his decision denying Anderson's application for benefits. Anderson then filed her complaint in this Court pursuant to 42 U.S.C. § 405(g).

**II.  RELEVANT BACKGROUND**

Anderson was born on September 11, 1973 and was 36 years old at the time the ALJ issued his decision (Tr. 146). She has a GED and past work experience as an automobile

salesperson, customer service representative, factory worker, purchasing agent, and waitress (Tr. 36, 240-241).

    **A.**    **Medical Evidence**

In July 2006, Anderson underwent a psychiatric evaluation by her psychiatrist, Dr. McFadden (Tr. 305). She described symptoms of depression occurring off and on for many years. *Id*. She stated that she had difficulty trusting others and that her counselor at a psychiatric center lied to her. *Id*. She also stated that she had been on a variety of antidepressant medications in the past. *Id*. Dr. McFadden reported that Anderson had been sexually, verbally, and physically abused by her father and physically abused by her mother. *Id*. She described having flashbacks and insomnia, but denied any psychotic symptoms or thoughts to harm herself or others (Tr. 306-307). She began to see a counselor at her church, which she found very helpful (Tr. 306). Anderson was diagnosed with major depression, post traumatic stress disorder ("PTSD"), borderline personality traits, and a possible seizure disorder (Tr. 307). She was assigned a Global Assessment of Functioning ("GAF") of 53.[1] *Id*.

She was again seen by Dr. McFadden in October 2006 for major mood swings (Tr. 413). She experienced daily sadness, tearfulness, and increased nervousness. *Id*. She had several recent seizures and a low appetite. *Id*. Later in October, she saw a psychologist (Tr. 342). She reported depressive symptoms including disturbed sleep, feelings of hopelessness and worthlessness, poor concentration, and decreased appetite. *Id*. During her mental exam, she was unable to remember three words given to her after a delay of about five minutes (Tr. 343).

---

[1] GAF scores represent on a single day an individual's overall level of functioning, including symptom severity. The GAF numeric scale runs from 0 through 100. The higher the GAF score, the less severe the symptoms and the individual will have a higher level of functioning. *See* American Psychiatric Ass'n, *Diagnostic & Statistical Manual of Mental Disorders* 32-34 (4th ed. 2000)(DSM-IV).

Anderson showed no signs of auditory or visual hallucinations, delusion, or unusual thoughts, but she appeared very self-conscious about offending the psychologist (Tr. 344). She described herself as a "people person." *Id*. In the psychologist's opinion, Anderson appeared able to comprehend instructions and to relate well with others, but showed moderate difficulty in sustaining attention and concentration and would likely experience slight to moderate impairment of her ability to initiate, sustain, and complete tasks independently. *Id*. Additionally, the psychologist stated that she would likely experience moderate impairment of her ability to withstand usual work pressures. *Id*. He rated her GAF as 50. *Id*.

Also in October 2006, Anderson underwent a physical examination at the request of the Social Security Administration (Tr. 311). The examining physician stated that Anderson showed evidence of depression, a seizure disorder, anxiety, insomnia, poor concentration, and a memory impairment (Tr. 321). He recommended that she see a psychiatrist on a regular basis. *Id*. A state reviewing psychologist stated that Anderson had the ability to do simple repetitive tasks (Tr. 339).

In November 2006, she reported to Dr. McFadden that her depression had increased and that she was having nightmares and flashbacks (Tr. 412). She stated that one of her medications made her "too sedated," so it was decreased. *Id*. She also reported that she had been hospitalized for seizures. *Id*. During her mental status exam, Anderson described many PTSD symptoms and her mood was anxious, and she was estranged from her family. *Id*. Also in November, Anderson was examined by a neurologist (Tr. 394). The neurologist noted that Anderson was on a high dose of an anti-seizure medication, but still had frequent spells (Tr. 396). This raised the question of whether the spells were real seizures or non-epileptic events.

3

*Id*. The neurologist believed that Anderson's headaches were probably a result of the seizure activity or part of her depression. *Id*. In February 2007, another neurologist opined that Anderson's seizures were likely psychological in origin, rather than epileptic (Tr. 438).

On February 9, 2007, Anderson saw Dr. McFadden and reported that her father had moved to Oklahoma (Tr. 409). Additionally, she had recently discovered that her former pastor had paid her parents to have sex with her. *Id*. Dr. McFadden recommended group therapy, but Anderson declined. *Id*. In a letter dated the same day, Dr. McFadden stated that Anderson was unable to work at that time and he did not have any expectations that she could hold a full time job (Tr. 403). He did not believe that she could tolerate relationships with coworkers without extreme anxiety (Tr. 402).

On February 13, 2007, Anderson's treating physician, Dr. Haimes, opined that she did not feel that Anderson was capable of regular employment due to epileptic episodes and an anxiety disorder (Tr. 404). Dr. Haimes stated that she hoped that once Anderson's epilepsy was under control, that her anxiety would also improve and she would be able to return to gainful employment. *Id*. However, she believed that would not occur for at least one year. *Id*.

Anderson returned to Dr. McFadden on March 9, 2007 reporting that she had been to two funerals, including her grandmother's (Tr. 408). She stated that she had a tremor and anxiety at the funerals. *Id*. She was seen again on March 29, 2007, and she claimed that she had found a dead body at a campground (Tr. 407). On April 26, 2007, she returned, reporting that her grandmother was ill but not actually dead as she had told Dr. McFadden in March (Tr. 406). Dr. McFadden made a note that it was difficult to assess "how accurate her story [was]" (Tr. 407). By April 2008, Anderson was living with both parents, but Dr. McFadden encouraged her to

4

leave her father's home because of the stress he caused her. *Id*.

### B. ALJ Hearing on October 6, 2009

#### 1. Anderson's Testimony

Anderson testified at the ALJ hearing that she quit working in 2006 after having episodes of losing consciousness (Tr. 38). She stated that Dr. Haimes did not want her working (Tr. 39). Anderson also stated that she took medication for depression, asthma, migraines, anxiety, and insomnia (Tr. 43). She further testified that her problems increased after she moved back in with her parents (Tr. 58). Anderson's friend testified at the ALJ hearing on her behalf, stating that he had witnessed Anderson lose consciousness at least thirty times over the previous six years (Tr. 60). He also stated that if it were not for he and his wife, Anderson would never leave the house (Tr. 62).

#### 2. Vocational Expert Testimony

The ALJ asked the vocational expert to consider someone who could not work in hazardous conditions (including lifting heavy weights), in atmospheric concentrations of dust, smoke and chemical fumes, or temperature or humidity extremes that would not be as comfortable as ordinary retail commercial environments (Tr. 68). This individual could not do work that requires intense contact with the public or strangers (Tr. 69). The vocational expert replied that none of Anderson's past relevant work could be performed by this individual (Tr. 71). However, he believed that Anderson could work as a mail sorter, but not in a post office (Tr. 73). He testified that there were more than 200 of these jobs regionally, 3620 in the state, and over 100,000 in the national economy (Tr. 74). He also believed Anderson could work as an office helper, with more than 600 jobs regionally, 3000 in the state, and 30,000 nationally. *Id*.

Finally, the vocational expert believed that Anderson could work as an information clerk. *Id*. There were 100 of these positions in the region, more than 750 in the state, and about 10,000 nationally. *Id*.

### 3. ALJ Determination

On March 2, 2010, the ALJ found that Anderson was not disabled (Tr. 25). The ALJ found that Anderson had the residual functional capacity ("RFC") to perform light work, but she could not perform any past relevant work (Tr. 23). However, the ALJ determined that there were jobs that existed in significant numbers in the national economy that Anderson could perform. (Tr. 24). Therefore, she was not disabled. *Id*.

## III. ANALYSIS

### A. Standard of Review

The standard of review for an ALJ's decision is whether it is supported by substantial evidence and free of legal error. *See* 42 U.S.C § 405(g); *Briscoe v. Barnhart*, 425 F.3d 345, 351 (7th Cir. 2005); *Haynes v. Barnhart*, 416 F.3d 621, 626 (7th Cir. 2005); *Golembiewski v. Barnhardt*, 322 F.3d 912, 915 (7th Cir. 2003). However, an ALJ's legal conclusions are reviewed *de novo*. *Haynes*, 416 F.3d at 626. Substantial evidence is more than a scintilla and means such relevant evidence as a reasonable mind might accept to support such a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1972). A reviewing court is not to substitute its own opinion for that of the ALJ's or to re-weigh the evidence, but the ALJ must build a logical bridge from the evidence to his conclusion. *Haynes*, 416 F.3d at 626. An ALJ decision cannot stand if it lacks evidentiary support or an adequate discussion of the issues. *Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003).

### B. Hall's Motion for Remand

Anderson must establish that she is disabled to be entitled to benefits under the Social Security Act. *See* 42 U.S.C. § 423(a)(1)(D). The Act specifically defines "disability" as:

> inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. § 423(d)(1)(A). The Social Security regulations prescribe a sequential five-part test for determining whether a claimant is disabled. The ALJ must consider whether: (1) the claimant is presently employed; (2) the claimant has a severe impairment or combination of impairments; (3) the claimant's impairment meets or equals any impairment listed in the regulations as being so severe as to preclude substantial gainful activity; (4) the claimant's residual functional capacity leaves him unable to perform his past relevant work; and (5) the claimant is unable to perform any other work existing in significant numbers in the national economy. 20 C.F.R. §§ 404.1520(a)(4)(i)-(v), 416.920; *Briscoe*, 425 F.3d at 352. If the ALJ can find that the claimant is not disabled at any step, he does not go on to the next step. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).

An impairment or combination of impairments is considered severe if the applicant's physical or mental ability to perform basic work activities is significantly limited. 20 C.F.R. § 404.1521(a). The combination of impairments is taken into account, even if each individual impairment would not be considered severe. 20 C.F.R. § 404.1523. If the applicant does not meet this requirement, then the applicant is not disabled. 20 C.F.R. § 404.1520(c). In order to be considered severe, the impairment must either cause the applicant's death, or has lasted or is expected to last for a continuous period of at least 12 months. 20 C.F.R. § 404.1509. When

assessing the severity of an impairment, the applicant's age, education, and work experience are not considered. *Id.* However, it is still possible for the applicant to have been disabled for a period of time in the past even if the applicant currently does not have a severe impairment. *Id.*

If the applicant's impairment or combination of impairments meets the requirements outlined in Subpart P, Appendix 1 and also meets the duration requirement, then the applicant is disabled without considering the applicant's age, work experience, or education. 20 C.F.R. § 404.1520(d). Once the ALJ finds that the applicant is not disabled after the first three steps, then the ALJ assesses the RFC. 20 C.F.R. § 404.1520(e). The RFC is the applicant's ability to do physical and mental work activities on a sustained basis despite limitations. *Id.* Once the RFC is determined, it is compared to the applicant's past relevant work to see if the applicant could still perform that type of work. 20 C.F.R. § 404.1520(f). If the applicant could still perform past relevant work, then the applicant is not disabled. *Id.* Past relevant work includes any substantial work performed within the last 15 years. 20 C.F.R. § 404.1560(b)(1). The applicant has the burden to prove the first four steps, but upon reaching step five, the burden shifts to the Commissioner. 20 C.F.R. § 404.1520(e).

First, the Court must determine if the ALJ reasonably concluded that Anderson's impairments did not meet or equal Listing 11.03. Next, the Court must decide if the ALJ reasonably evaluated the medical opinions in the record. Finally, the Court must decide if the ALJ's credibility determination was reasonable.

> **1.  The ALJ reasonably concluded that Anderson's impairments did not meet or equal Listing 11.03.**

Anderson first alleges that the ALJ unreasonably concluded that her impairments did not meet or equal Listing 11.03 for non-compulsive epilepsy. Listing 11.03 requires:

> [Documentation] by detailed description of a typical seizure pattern, including all associated phenomena; occurring more frequently than once weekly in spite of at least 3 months of prescribed treatment. With alteration of awareness or loss of consciousness and transient postictal manifestations of unconventional behavior or significant interference with activity during the day. 20 C.F.R. § 404 app. 1.

In order to receive disability benefits, the claimant "must satisfy all of the various criteria specified in the listing." *Ribaudo v. Barnhart*, 458 F.3d 580, 583 (7th Cir. 2006). Further, a claimant's self-reported symptoms alone cannot establish a disability. *See* 20 C.F.R. § 1529(a).

Here, Anderson failed to show that she suffered uncontrolled seizures or pseudoseizures more than once per week. The ALJ noted that there was only occasional documentation of the episodes in the record (Tr. 20). Further, although Anderson's witness stated that he saw thirty seizure episodes over a six year period, that frequency fell short of the more than once weekly requirement under Listing 11.03 (Tr. 16). Anderson cites to her reports to physicians about her seizure troubles, but these are merely self-reported symptoms. Therefore, this Court finds that the ALJ reasonably concluded that the lack of objective observation as to the frequency of Anderson's episodes required a finding that she did not meet or equal Listing 11.03.

### 2. The ALJ reasonably evaluated the medical opinions in the record.

Anderson next alleges that the ALJ unreasonably evaluated the medical opinions in the record. "A treating physician's opinion regarding the nature and severity of a medical condition is entitled to controlling weight if supported by the medical findings and consistent with substantial evidence in the record." *Skarbek v. Barnhart,* 390 F.3d 500, 503 (7th Cir. 2004), *see* 20 C.F.R. § 404.1527(d)(2). If the ALJ does not give the treating physician's opinion controlling weight, he must present "good reasons" for discounting that opinion. *See* 20 C.F.R. §404.1527(d)(2). "If the treating physician's opinion is . . . based solely on the patient's

9

subjective complaints, the ALJ may discount it." *Ketelboeter v. Astrue*, 550 F.3d 620, 625 (7th Cir. 2008). However, an ALJ's conjecture is never a permitted basis for ignoring a treating physician's views. *Moss v. Astrue,* 555 F.3d 556, 560 (7th Cir. 2009).

First, Anderson contends that Dr. McFadden's opinion that she could not hold a full time job was improperly evaluated. The ALJ discounted Dr. McFadden's opinion because it was written at a time when the claimant was particularly distraught (Tr. 22). Further, Dr. McFadden's assessment was based mainly on Anderson's reports, which were not always credible (Tr. 23). In March 2007, Anderson told Dr. McFadden that her grandmother had died and it caused her anxiety to be at the funeral (Tr. 408). A month later, she informed Dr. McFadden that her grandmother actually had not died (Tr. 406). Additionally, Anderson claimed that she found a dead body at a campground, and Dr. McFadden himself made note of the difficulty in assessing her credibility (Tr. 407).

The ALJ also discounted Dr. McFadden's opinion because it was inconsistent with the statements Anderson made to the psychologist she visited in October 2006 (Tr. 17). Dr. McFadden said that Anderson could not sustain relationships with coworkers, but the psychologist believed that Anderson would relate well with others (Tr. 344). Also, Anderson described herself as a "people person" during the meeting with the psychologist. *Id*. Therefore, to the extent that Dr. McFadden's opinion was discounted, the ALJ supported his determination with substantial evidence.

Next, Anderson contends that the ALJ improperly evaluated Dr. Haimes' opinion that Anderson was incapable of regular employment. Dr. Haimes' opinion was based on Anderson's own, subjective complaints rather than objective evidence (Tr. 22). Therefore, it was appropriate

10

for the ALJ to discount Dr. Haimes' opinion. *See Ketelboeter,* 550 F.3d at 625.

Finally, Anderson contends that the ALJ improperly evaluated the opinion of the psychologist she met with in October 2006. Specifically, she argues that the ALJ's RFC determination did not consider her GAF score of 50. "Nowhere do the Social Security regulations or case law require an ALJ to determine the extent of an individual's disability based entirely on [her] GAF score." *Denton v. Astrue*, 596 F.3d 419, 425 (7th Cir. 2010). The ALJ did consider the psychologist's opinion that Anderson had moderate impairment in her ability to initiate, sustain, and complete tasks independently and to withstand usual work pressures (Tr. 23). Therefore, this Court finds that the ALJ did not err in not including Anderson's GAF score in his RFC determination.

### 3. The ALJ's credibility determination was reasonable.

Lastly, Anderson contends that the ALJ's credibility determination was unreasonable. Because an ALJ is in a special position where he can hear, see, and assess witnesses, an ALJ's credibility determinations are given special deference; and, as a result, an ALJ's credibility determinations will only be overturned if they are patently wrong. *Jens v. Barnhart*, 347 F.3d 209, 213 (7th Cir. 2003).

Anderson's doctors believed that her seizures were psychological in origin and that the stress of living with her parents contributed to her seizures (Tr. 396, 438). However, she did not follow the doctors' advice to leave her parents' home (Tr. 22). Anderson also refused other recommended treatment, such as group therapy (Tr. 409). Additionally, Anderson told her doctor that she had attended her grandmother's funeral, when in fact her grandmother was not dead (Tr. 406). The ALJ also noted that at the hearing, Anderson claimed that she did not like to

leave the house, but she had previously told a psychologist that she was a "people person" (Tr. 17, 344). For these reasons, this Court finds that the ALJ's credibility determination was reasonable.

### III. CONCLUSION

Because the ALJ's Listing 11.03 decision was reasonable, he reasonably evaluated the medical opinions in the record, and his credibility determination was reasonable, Anderson's motion for remand is **DENIED**. Accordingly, this Court **AFFIRMS** the ALJ's decision.

**SO ORDERED**

Dated this 10th day of April, 2012.

s/Christopher A. Nuechterlein  
Christopher A. Nuechterlein  
United States Magistrate Judge